United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 20, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 03-60789

DAVID ROY,

Petitioner,

versus

JOHN ASHCROFT,
Attorney General of the United States,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals

Before DeMOSS, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:

Petitioner David Roy ("Roy") seeks review of an order of the Board of Immigration Appeals ("BIA") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). For the following reasons, we deny his petition for review.

BACKGROUND

Roy is a 23-year-old native and citizen of India who was admitted to the United States on May 23, 1999, as a nonimmigrant with authorization to remain for a temporary period not to exceed November 22, 1999. On August 2, 2000, the Immigration and

Naturalization Service ("INS") issued a Notice to Appear, charging Roy with being subject to removal as an alien admitted as a nonimmigrant who remained for a longer time than permitted. 8 U.S.C. § 1182(a)(6)(A)(1). At a hearing on August 24, 2000, Roy admitted he remained beyond the date permitted by the INS; the Immigration Judge ("IJ") found Roy's removability was established by clear and convincing evidence.

Roy filed an asylum application dated October 6, 2000.[1] The IJ considered the Roys' respective applications for relief at a hearing on January 22, 2001. Roy and his parents represented themselves. At this hearing, Roy testified that in 1998, when he was in high school, some Hindu and Sikh boys from his school expressed animosity toward him because he was Christian and hit him with sticks and kicked him. Roy suffered no broken bones, though he still experiences physical pain. Roy completed his schooling in March 1999 and received his high school diploma.

The IJ found each of the Roys had filed a frivolous asylum application and denied their applications. Upon *de novo* review, the BIA issued a decision on August 28, 2003, reversing the IJ's findings of frivolousness as to all the Roys; granting Roy's father's asylum application and Roy's mother's derivative application; and denying Roy's asylum application as untimely

---

[1] Roy's father Gulwant Roy had filed an asylum application dated April 30, 2000. This application covered Roy's mother Jamila Roy Dass as derivative.

because it was filed outside the one-year deadline and Roy did not demonstrate changed circumstances which materially affected his eligibility for asylum or extraordinary circumstances related to his delay in filing. The BIA noted that even if the application had been timely filed, Roy had not established either past persecution or a well-founded fear of persecution. The BIA also denied Roy's applications for withholding of removal and relief under the CAT but granted him voluntary departure.

Roy filed a timely petition for review in this Court on September 26, 2003. That same day, Roy also filed a motion to reissue the opinion and a motion to reopen/consider with the BIA. Roy claimed the BIA had addressed its decision to another attorney and that his counsel did not receive the decision until September 24, 2003. Roy also argued that he was entitled to an exception from the one-year period for filing asylum applications.

The BIA noted the mismailing and determined that Roy's counsel did not receive the order in time to comply with the requirements for voluntary departure. The BIA reissued its decision on December 16, 2003, and again on January 21, 2004, and stated it would "treat it as if it had been entered on today's date." The BIA declined to reconsider its timeliness decision. Roy did not file a petition for review from either of the BIA's reissued orders.

## DISCUSSION

This Court has jurisdiction to review final orders of removal.

3

8 U.S.C. § 1252(a) & 1252(b).[2]  Section 1252(b)(1) states:  "The petition for review must be filed not later than 30 days after the date of the final order of removal."  *Id.* § 1252(b)(1).  Section 1252 (b)(6) states:  "When a petitioner seeks review of an order under this section, any review sought of a motion to reopen or reconsider the order shall be consolidated with the review of the order."  *Id.* § 1252(b)(6).

## I.    Whether this Court has jurisdiction to consider Roy's petition.

As an initial matter, Respondent argues that this Court does not have jurisdiction to consider Roy's petition for review because the BIA reissued its decision and Roy did not file a new petition for review of either of the reissued decisions.  Roy contends that this Court has proper jurisdiction because he filed a timely petition for review of the BIA's original decision and the reissuances did not divest this Court of jurisdiction.

The parties dispute the applicability of *Firmansjah v. Ashcroft*, 347 F.3d 625 (7th Cir. 2003).  In *Firmansjah*, the petitioner claimed she did not receive notice of the BIA's decision within the 30-day period for seeking judicial review and requested the BIA reissue its decision.  347 F.3d at 626.  The BIA reissued the order, stating that the reissued decision "shall be treated as

_____

[2]Here, the parties agree this Court cannot review Roy's asylum claim because we lack jurisdiction to review the BIA's time bar determination.  8 U.S.C. § 1158(a)(3).

4

entered as of today's date." *Id.* The Seventh Circuit determined that the BIA had authority to reissue its decision and thus extend the time for a petitioner to seek judicial review. *Id.* at 626-27. The Seventh Circuit found it had jurisdiction. *Id.* at 627.

Respondent argues that each reissued order here, as in *Firmansjah*, stated it would be treated as if newly entered. Therefore, the most recently reissued decision is the final order of removal and this Court lacks jurisdiction because Roy's petition for review is directed only to the BIA's original decision. Roy contends *Firmansjah* is not applicable because he, unlike Firmansjah, timely petitioned for review of the BIA's original order. Roy notes that the BIA reissued its decision in response to his motion and argues the reissued decisions are "consolidated" with the petition for review under § 1252. Further, if the BIA is permitted to divest this Court of jurisdiction over a properly filed petition for review by reissuing a decision, the BIA has gained a "powerful tool" over this Court.

This Circuit has not previously considered this jurisdictional question. Here, Roy certainly appealed the BIA's original order of removal issued on August 28, 2003, within the 30-day deadline required by § 1252(b)(1). The same day Roy petitioned for review, on September 26, 2003, he also moved the BIA to reissue due to the mismailing and late receipt, and to reopen/reconsider its decision of removal. Based on the language of § 1252, on September 26,

5

2003, jurisdiction had vested in this Court over the BIA's August 28, 2003, order of removal. Moreover, any review Roy had sought of the denial of the motion to reopen/reconsider with the BIA would have been consolidated with the petition for review under § 1252(b)(6).[3]

When the BIA reissued its decision on December 16, 2003, and again on January 21, 2004, it noted the circumstances of the mismailing and chose to equitably reissue the order specifically so Roy would be able to timely comply with the requirements for voluntary departure, as had been ordered in the BIA's original decision. Unlike in **Firmansjah**, where the BIA "enter[ed] a new removal order, which is subject to a fresh petition for review," 347 F.3d at 627, the BIA here did not need to equitably restart the 30-day clock for Roy to timely petition for review. Thus, the BIA did not enter a new removal order but only reissued its prior removal order for the equitable purpose of allowing Roy to timely comply with the requirements of voluntary departure. Therefore, this Court was not divested of jurisdiction over Roy's timely filed petition for review of the BIA's original removal order when the BIA chose to reissue its decision for the equitable purpose of allowing Roy to timely comply with the requirements for voluntary departure.

---

[3]Roy did not seek review of the denial of his motion to reopen/reconsider.

## II. Whether this Court can review Roy's "due process" claim.

Roy argues that his hearing before the IJ was fundamentally unfair such that it violated his due process rights under the Fifth Amendment. Roy contends the IJ failed to advise him of his rights and did not provide him with a reasonable opportunity to question his mother or to explain the dangers he would face if returned to India. Respondent maintains that this Court lacks jurisdiction with respect to this issue because Roy failed to raise this argument before the BIA.

Roy admits that the due process issues were not raised directly before the BIA. However, Roy maintains that he raised them indirectly by including a discussion of the IJ's failure to elicit additional information from the applicants and to afford them an opportunity to account for discrepancies or implausibilities in their stories.[4]

Judicial review of a final order of removal is available only where the applicant has exhausted all administrative remedies of right. 8 U.S.C. § 1252(d)(1). Failure to exhaust an issue creates a jurisdictional bar as to that issue. *Wang v. Ashcroft*, 260 F.3d 448, 452 (5th Cir. 2001). "An alien fails to exhaust his administrative remedies with respect to an issue when the issue is not raised in the first instance before the BIA – either on direct

---

[4]Roy included this discussion in the course of his argument to the BIA that the IJ had erred by determining his asylum application was frivolous.

7

appeal or in a motion to reopen." *Id.* at 452-53 (citing *Goonsuwan v. Ashcroft*, 252 F.3d 383, 388-89 (5th Cir. 2001)). Claims of due process violations, except for procedural errors that are correctable by the BIA, are generally not subject to the exhaustion requirement. *Anwar v. INS*, 116 F.3d 140, 144 n.4 (5th Cir. 1997). In *Anwar*, the petitioner's challenge to the federal regulations regarding the submission of briefs was not subject to exhaustion. *Id.* However, "[w]hen a petitioner seeks to raise a claim not presented to the BIA and the claim is one that the BIA has adequate mechanisms to address and remedy, the petitioner must raise the issue in a motion to reopen prior to resorting to review by the courts." *Goonsuwan*, 252 F.3d at 390. "It is irrelevant that the procedural error alleged . . . is couched in terms of a due process violation." *Id.* at 389-90 (citation omitted).

Although Roy's argument is couched in terms of due process, it actually concerns "procedural error correctable by the BIA." *Anwar*, 116 F.3d at 144 n.4; *see also Matter of Exame*, 18 I&N Dec. 303, 305 (BIA 1982) (remanding the record where the IJ had improperly denied admission of background evidence, thus precluding "the applicant from making a full and fair presentation of his persecution claim"). Thus, it is properly subject to the exhaustion requirement. Roy did not raise this point of procedural error to the BIA in his brief or motion to reopen. Therefore, we cannot review Roy's claim that his hearing was fundamentally

8

unfair.

## III. <u>**Whether there is substantial evidence to support the BIA's denial of relief on Roy's withholding of removal and CAT claims.**[5]</u>

Roy contends that there is no substantial evidence to support the BIA's denial of withholding of removal. Roy also argues that, assuming the BIA's opinion is sufficient for review (addressed below in subpart B.), there is no substantial evidence to support the BIA's denial of relief under the CAT.

Where the BIA conducted a *de novo* review of the record evidence and did not adopt any part of the IJ's decision, this Court limits its review to the BIA's decision. ***Girma v. INS***, 283 F.3d 664, 665 (5th Cir. 2002); ***Mikhael v. INS***, 115 F.3d 299, 302 (5th Cir. 1997). For review of orders of removal under the Immigration and Naturalization Act ("INA"), section 242(b)(4)(B), "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude the contrary." 8 U.S.C. § 1252(b)(4)(B). This Court reviews factual findings to determine if they are supported by substantial evidence in the record. ***Mikhael***, 115 F.3d at 302. "The substantial evidence standard requires only that the [BIA's] conclusion be

---

[5]In addition, Respondent argues that Roy did not exhaust his administrative remedies with respect to his withholding of removal and CAT claims and thus forfeited his right to raise these issues on appeal. *Id.* § 1252(d)(1). We disagree. Roy specifically requested withholding of removal and CAT relief in his brief to the BIA, and the BIA specifically denied such relief.

9

based upon the evidence presented and be substantially reasonable."
*Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 350 (5th Cir. 2002)
(citation omitted).  The BIA will be reversed only when the
evidence is "so compelling that no reasonable fact finder could
fail to find" the petitioner statutorily eligible for relief.  *INS
v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *Mikhael*, 115 F.3d
at 302.

## A.    Withholding of removal.

To be eligible for withholding of removal, an applicant must
demonstrate a "clear probability" of persecution upon return.
*Faddoul v. INS*, 37 F.3d 185, 188 (5th Cir. 1994).    A clear
probability means that it is more likely than not that the
applicant's life or freedom would be threatened by persecution on
account of either his race, religion, nationality, membership in a
particular social group, or political opinion.  *Bah v. Ashcroft*,
341 F.3d 348, 351 (5th Cir. 2003); *see also* *INS v. Stevic*, 467 U.S.
407, 424, 429-30 (1984) (describing this more likely than not
standard).  Persecution has been construed as requiring a showing
that "harm or suffering will be inflicted upon [him] in order to
punish [him] for possessing a belief or characteristic a persecutor
sought to overcome."  *Faddoul*, 37 F.3d at 188.  "[T]here must be
some particularized connection between the feared persecution and
the  alien's  race,  religion,  nationality  or  other  listed
characteristic.  Demonstrating such a connection requires the alien

10

to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution." *Id.* "Withholding of removal is a higher standard than asylum," *Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002), which requires a showing of past persecution or a well-founded fear of persecution on one of the five stated grounds. *Id.* at 904.

Roy argues that the BIA failed to consider that, if his father was persecuted in the past and had a well-founded fear of persecution for his religious beliefs, as the BIA implicitly determined in granting his father's asylum application, Roy also would be persecuted because he will be identified as Christian. Roy maintains the BIA should not have considered his application in isolation.

Respondent counters that the record evidence contained virtually no evidence that Roy faced any risk of harm from anyone if he returned to India. One high school incident could not establish eligibility for asylum, much less withholding of removal. Respondent also charges the connection between Roy and his father could not lead to Roy being persecuted for his father's activities because Roy was not present during any of his father's incidents and because Roy and his mother lived in a different district in India, apart from Roy's father.

The BIA first considered Roy's evidence of the one high school incident and determined even that even if his asylum application

11

had been timely filed, he had not shown that he suffered past persecution or he had a well-founded fear of persecution. Thus, the BIA denied Roy's asylum claim. The BIA then stated that having considered the record evidence, it found Roy had not demonstrated eligibility for withholding of removal, citing *Stevic*, among other authorities.

The BIA had noted several specific incidents in which Roy's father had been subjected to beatings, threatened, and arrested in connection with his, and his minister brother-in-law's, active involvement in the Christian church in the village. These incidents occurred while Roy's father was preaching the Bible, distributing pamphlets, and attending a prayer meeting. Roy did not show himself to be present at any of these incidents. In contrast, Roy's testimony of the one high school incident did not show any particular connection to his being Christian other than his claim that was the motivation. Moreover, Roy offered no specific, detailed facts demonstrating that more likely than not anyone or any group would harm him for being Christian (or for any imputed connection to his father) if he returned to India.

A finding by the BIA that Roy's father had met the lower threshold of past persecution or a well-founded fear of persecution to be eligible for asylum did not indicate or imply that his son Roy could then meet the more stringent level of proof required for withholding. *See Girma*, 283 F.3d at 666-67 (citing *Mikhael*, 115

12

F.3d at 306). Roy has not shown the evidence is so compelling that no reasonable fact finder could fail to find Roy eligible for withholding. Therefore, we find that substantial evidence supported the BIA's finding that Roy failed to prove that he would more likely than not be persecuted if returned to India.

### B. CAT claim.

As a threshold, Roy maintains the BIA's decision as to Roy's CAT claim is insufficient for our review. This Court will "review the BIA's decision 'procedurally' to ensure that the complaining applicant has received full and fair consideration of all circumstances that give rise to his or her claims." *Abdel-Masieh v. INS*, 73 F.3d 579, 585 (5th Cir. 1996) (internal quotation marks and citation omitted). The BIA does not have to "write an exegesis on every contention. What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Efe*, 293 F.3d at 908.

Roy contends the BIA failed to analyze his CAT claim and rejected the claim in a single sentence. Roy seeks remand of the proceedings to the BIA to issue a sufficient opinion regarding his eligibility for CAT relief.

Respondent counters that the BIA's analysis was properly tailored to the evidence presented. Respondent also suggests that any abbreviated denial by the BIA stemmed from a lack of evidence

13

supporting the CAT claim.

After rejecting Roy's asylum claim and his request for withholding of removal, the BIA rejected Roy's claim for relief under the CAT in a single sentence, stating: "In addition, we find that the respondent failed to establish that he qualified for relief under the [CAT]." But before announcing this one-sentence conclusion, the BIA considered the evidence Roy put forth. The BIA stated that Roy testified only to the one high school incident, where some Sikh and Hindu classmates had hit him with sticks and kicked him. Roy does not dispute that this testimony is the only incident he advanced.

A claim under the CAT is a separate claim from withholding under the INA. *Id.* at 906-07. Unlike persecution to show eligibility for asylum or withholding, there need not be any connection between the applicant's race, religion, nationality, membership in a particular social group, or political opinion, and the inflicted torture. *Id.* at 907. The CAT standard for relief "does not require persecution, but the higher bar of torture. The applicant has the burden of proving 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Id.* at 907 (citing 8 C.F.R. § 208.16(c)(2)). Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the instigation of or with the consent or

14

acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

The BIA did not expressly cite the CAT standard. However, the BIA had explicitly concluded that Roy had not established either past persecution or a well-founded fear of persecution to be eligible for asylum, nor established eligibility for withholding. The BIA considered the record evidence pertaining to Roy and implicitly found it likewise failed to meet the more stringent CAT standard of torture. Therefore, we find the BIA's decision as to Roy's CAT claim sufficient for review.

As to the merits, Roy contends that the BIA's denial of his CAT claim is not substantially reasonable given his evidence that he was attacked by Sikhs and Hindus on account of his religion. Roy points to his mother's testimony that police have harassed and threatened members of her family for proselytizing. Roy also notes the section on India in the *1999 Country Reports on Human Rights Practices*, U.S. Dep't of State (Feb. 25, 2000), to support his claim that Hindu extremist groups attack Christians and the government response is inadequate.

Respondent argues that the one incident Roy testified to could not meet the high bar of torture. According to Respondent, the record is devoid of any evidence that would justify finding Roy eligible for CAT relief, let alone compel it. Respondent emphasizes that when asked why he could not return to India, Roy

15

did not state he feared torture or even harassment at the hands of the police, or the Sikhs or Hindus.

The record indicates the Indian government criticizes attacks against Christians and respects the constitutional right of freedom of religion in practice. *1999 Annual Report on Int'l Religious Freedom*, U.S. Dep't of State (Sept. 9, 1999). We note that the section of Roy's mother's testimony cited by Roy concerned not him, but rather his father, his father's brother-in-law, and his father's nephew. We also note that Roy did not show himself to be present at anytime these other members of his family were arrested, harassed, or beaten. Notably absent in any of the evidence Roy put forth was any suggestion that he himself would more likely than not be subject to any torture by or acquiesced in by the police if he returned to India. Roy has not shown the evidence is so compelling that no reasonable fact finder could fail to find Roy eligible for CAT relief. Therefore, we find that substantial evidence supported the BIA's finding that Roy failed to prove that he would more likely than not be tortured if returned to India.

## CONCLUSION

Having carefully considered the record of the case and the parties' respective briefing, for the reasons set forth above, we DENY the petition for review.

**DENIED.**

16